UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICH MARINE SALES, INC. and RICH
MARINA CORP.,

          Plaintiffs,　　　　　　　　**DECISION AND ORDER**

      v.　　　　　　　　　　　　　　1:18-CV-00823 EAW

THE UNITED STATES OF AMERICA and
LUEDTKE ENGINEERING COMPANY,

          Defendants.
_____

LUEDTKE ENGINEERING COMPANY,

          Cross-Claimant,

      v.

THE UNITED STATES OF AMERICA,

          Cross-Defendant.
_____

## INTRODUCTION

Plaintiffs Rich Marine Sales, Inc. and Rich Marina Corp. ("Plaintiffs") commenced this action on July 27, 2018, alleging that the United States of America (the "United States") and Luedtke Engineering Company ("Luedtke") (collectively, "Defendants") negligently dredged the Black Rock Channel (the "Channel") along the Niagara River in Buffalo, New York. (*See* Dkt. 1). On August 29, 2018, Luedtke filed an Answer to the Complaint and cross-claimed against the United States for indemnification and contribution in the event Luedtke was found liable to Plaintiffs. (Dkt. 10 at 17).

Presently before the Court is the United States' motion to dismiss the cross-claims for lack of subject matter jurisdiction, or, alternatively, for judgment on the pleadings for failure to state a claim. (Dkt. 16). For the following reasons, the United States' motion is granted and Luedtke's cross-claims are dismissed for lack of subject matter jurisdiction.

## BACKGROUND[1]

Plaintiffs own and operate a marina on the Channel opposite the United States Army Corps of Engineers' (the "Corps") Channel Locks. (Dkt. 1 at ¶ 1). The Channel "accommodates pleasure craft and commercial vessels up to 625 feet long with drafts up to 21 feet." (Id. at ¶ 20). Rich Marina Corp. owns 26 acres of property abutting the waterfront along the Channel (the "Property"), which includes the marina. (Id. at ¶ 18). The Property is protected by a "retaining wall," referred to as the "Bulkhead," which "serves as a barrier" between the Property and the Channel. (Id. at ¶¶ 4, 21).

The Corps is responsible for maintaining and repairing the Channel and has previously contracted third parties to perform dredging operations within the waterway. (Id. at ¶¶ 23-24). As part of an initiative to remove "potentially contaminated sediment from the Channel," the Corps "contracted with Luedtke in 2015 to conduct a dredging project" within a section of the Channel that runs parallel to the Property (the "Project"). (Id. at ¶¶ 26-27). The Corps determined the "specifications, the planning, the scope, and the supervision" of the Project. (Id. at ¶ 28).

---

[1] The following facts are drawn from Plaintiffs' Complaint (Dkt. 1) and Luedtke's cross-claims (Dkt. 10 at 17) and are assumed true for purposes of this motion.

Plaintiffs allege that, "[u]pon information and belief, the contract between [the Corps] and Luedtke required dredging solely within the confines of the Channel." (*Id.* at ¶ 32). However, Luedtke allegedly "performed dredging outside of the Channel and up to the Bulkhead," and "over-dredged the Channel beyond its contractual obligations." (*Id.* at ¶ 33). Plaintiffs also allege, in the alternative, that the Corps "directed Luedtke to over-dredge the Channel and dredge outside of the Channel up to the Bulkhead." (*Id.* at ¶ 34). Allegedly due to these dredging actions, "the riverbank adjacent to and underneath the Bulkhead slid into the Channel causing unsustainable strain on the Bulkhead." (*Id.* at ¶ 33). Nevertheless, "Luedtke continued to dredge material in this fashion resulting in the removal of the riverbank which supported the Bulkhead." (*Id.*).

As a result, "on July 28, 2016, approximately 250 feet of the Bulkhead" collapsed and fell into the Channel. (*Id.* at ¶ 36). In August 2016, another 100-foot section of the Bulkhead collapsed into the Channel due to the dredging activities. (*Id.* at ¶ 37). Finally, in April 2017, "a third section of the Bulkhead, approximately 75 feet in length, collapsed into the Channel as a direct result of the dredging performed by Luedtke." (*Id.* at ¶ 38). The remaining portion of the Bulkhead is allegedly "at imminent risk of collapse." (*Id.* at ¶ 39).

## PROCEDURAL HISTORY

On July 27, 2018, Plaintiffs commenced this action, asserting several tort causes of action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), and, alternatively, pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq.* ("SAA"), the Public Vessels Act, 46 U.S.C. § 31101 *et seq.* ("PVA"), and the Extension of Admiralty

Jurisdiction Act, 46 U.S.C. § 30101 *et seq.* (Dkt. 1). Plaintiffs claim that Defendants were negligent in carrying out their obligations under the dredging contract, and that their malfeasance resulted in damages under theories of negligence, gross negligence, and private nuisance. (*Id.*). On August 29, 2018, Leudtke filed an Answer and asserted cross-claims against the United States for indemnification and contribution. (Dkt. 10). On October 3, 2018, the United States filed its Answer to the Complaint. (Dkt. 14).

On November 9, 2018, the United States filed a motion to dismiss Leudtke's cross-claims, seeking dismissal for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. (Dkt. 16). Specifically, the United States argues that Leudtke's cross-claims are subject to the Contract Disputes Act, 41 U.S.C § 7101 *et seq.* ("CDA"), and thus, Leudtke was required to exhaust its administrative remedies before asserting these claims in this lawsuit. (Dkt. 16-1 at 4-8). According to the United States, because Leudtke failed to exhaust these administrative requirements this Court is without subject matter jurisdiction to entertain the cross-claims. (*Id.*). Alternatively, the United States contends that Leudtke's cross-claims are conclusory and do not satisfy the pleading standards enunciated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (*Id.* at 8-9). Leudtke opposes the United States' motion. (Dkt. 21). The Court held oral argument on May 10, 2019, and reserved decision. (Dkt. 32).

# DISCUSSION

## I. Legal Standard

"In the context of a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists." *Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 549 (S.D.N.Y. 2018) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[A] challenge to the jurisdictional elements of a [party]'s claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd*, 249 F. App'x 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Young v. United States*, No. 12-CV-2342 ARR SG, 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quotation omitted).

## II. The Contract Disputes Act

"The CDA creates a remedial scheme whereby persons wishing to bring a contract-based claim against the federal government must first submit their claim in writing to a contracting officer." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 401 (2d Cir. 2017) (citing 41 U.S.C. § 7103(a)(1)-(2)). The CDA "applies to any express or implied

contract . . . made by an executive agency for[, *inter alia*,] . . . the procurement of services . . . [or] the procurement of construction, alteration, repair, or maintenance of real property. . . ." 41 U.S.C. § 7102(a). Upon the submission of a claim to the contracting officer, the officer will "issue a decision in writing and shall mail or otherwise furnish a copy of the decision to the contractor." *Id.* § 7103(d).

"A 'contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency,' except as authorized by the CDA itself." *Cohen*, 873 F.3d at 401 (quoting 41 U.S.C. § 7103(g)). "The CDA provides that, within 90 days of receipt of a contracting officer's decision, an aggrieved contractor may either appeal a decision by a contracting officer to the relevant board of contract appeals, or bring an action directly on the claim in the United States Court of Federal Claims." *Id.* (quotation and citations omitted); *see* 41 U.S.C. § 7104(a)-(b)(1). "For maritime contracts, the CDA specifically provides that appeals under § 7107(a) or direct actions under § 7104(b) are governed by the PVA and SAA 'to the extent that those [acts] are not inconsistent with [the CDA].'" *Shaver Transp. Co. v. United States*, 948 F. Supp. 2d 1193, 1199 (D. Or. 2013) (quoting 41 U.S.C. § 7102(d)). As a result, "plaintiffs with maritime contract claims against the United States who have completed the CDA administrative review process may file suit in a United States District Court under the Suits in Admiralty Act." *Sealift Bulkers, Inc. v. Republic of Armenia*, No. 95-1293(PLF), 1996 WL 901091, at *3 (D.D.C. Nov. 22, 1996); *see McAllister Towing & Transp. Co. v. United States*, 17 F. Supp. 3d 442, 449 n.3 (E.D. Pa. 2014) ("Normally claims brought against the United States under the Contract Disputes Act must be brought in the Court of Federal

Claims, but maritime contracts are exempt from this provision and may be brought in U.S. District Court."); *see generally Misano di Navigazione, SpA v. United States*, 968 F.2d 273, 274 (2d Cir. 1992) (interpreting an earlier codification of § 7102 in stating that "a party to a maritime contract with the Government may seek in district court a trial *de novo* regarding a contracting officer's decision").

### III. Leudtke's Cross-Claims Fall Within the Scope of the CDA and Should be Dismissed for Lack of Subject Matter Jurisdiction

The principal dispute between Leudtke and the United States is whether Leudtke's cross-claims arise out of the dredging contract and are properly characterized as "essentially contractual," or whether they sound in tort. Leudtke argues that because its contribution and indemnification cross-claims are based on Plaintiffs' tort claims, they should also be considered tortious in nature. (Dkt. 21 at 1-2). If Leudtke is correct, "then the CDA's jurisdictional bar would not apply to its claim[s]." *Cohen*, 873 F.3d at 403 (citing 28 U.S.C. § 1346(a)(2) (providing that district courts are without jurisdiction over claims asserted against the United States founded "upon any . . . contract with the United States . . . in cases not sounding in tort")). However, because any duties owed by the United States to Leudtke derive from their contractual relationship, Leudtke's contribution and indemnification claims are essentially contractual in nature. Therefore, Leudtke has failed to carry its burden of demonstrating that this Court has subject matter jurisdiction over its cross-claims.

"In order to determine whether the CDA applies, federal courts generally look to whether the dispute at issue is one of contract." *United States v. J & E Salvage Co.*, 55

F.3d 985, 987 (4th Cir. 1995); *see Contango Operators, Inc. v. United States*, No. CV H-11-0532, 2011 WL 13130834, at *2 (S.D. Tex. Oct. 26, 2011) ("Courts look to the source of the rights claimed and the remedies sought in order to determine whether a claim 'relates to a contract' so as to fall within the CDA." (quoting *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008))); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996) ("[F]or the CDA to apply, it must first be determined that the claims asserted are 'essentially contractual' in nature." (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982))). Notably, the CDA "encompasses more than causes of action that arise under contract law; rather, the language encompasses any disputes that 'relate[ ] to a contract.'" *Lockheed Martin Corp. v. Def. Contract Audit Agency*, 397 F. Supp. 2d 659, 665 (D. Md. 2005) (quoting 41 U.S.C. § 605). The Second Circuit has "held that the question of whether an action is 'at its essence a contract action . . . depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought.'" *Cohen*, 873 F.3d at 403 (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999)). Courts must make "rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds." *Megapulse, Inc.*, 672 F.2d at 969-70.

> Where the right the plaintiff seeks to vindicate "stems from no independent, non-contractual source" and the remedy for violating that right is essentially a contractual remedy arising out of a contract within the scope of the CDA, then the claim is subject to the CDA notwithstanding a plaintiff's attempt to disguise it as a tort.

*Cohen*, 873 F.3d at 403 (quoting *Up State Fed. Credit Union*, 198 F.3d at 375); *see also J & E Salvage Co.*, 55 F.3d at 988 ("It is well-established . . . that disguised contract actions may not escape the CDA.").

Leudtke's cross-claim for contribution states, in pertinent part, that "[s]hould it be determined at the time of trial that some or all of the allegations of Plaintiffs' Complaint are true such that [Leudtke] is held liable to Plaintiffs, . . . then [Leudtke] seeks contribution from co-defendant, United States of America. . . ." (Dkt. 10 at 17). Leudtke's cross-claim for indemnification states, in pertinent part:

> Any and all injuries and damages alleged by the Plaintiffs were the proximate result of the negligence, breach of warranty, strict liability and/or other liability producing conduct of the co-defendant which conduct was primary and active, and if [Leudtke] is found liable with respect to Plaintiffs' alleged injuries and damages, such liability is solely secondary, imputed, and vicarious, and the co-defendant is liable over in indemnity.

(*Id.*). Lastly, Leudtke alleges that it is "also entitled to indemnification and contribution pursuant to any applicable contracts or agreements between the parties." (*Id.*).

Leudtke relies heavily on the fact that its cross-claims refer to Plaintiffs' allegations and argues that because the United States is named as a joint tort-feasor in this action, its claims for indemnification and contribution are not contractual. (*See* Dkt. 21 at 4-7). Of course, "[t]he plaintiff's title or characterization of its claims is not controlling." *RMI Titanium Co.*, 78 F.3d at 1136. What Leudtke fails to acknowledge is that its legal relationship with the United States arises directly out of the dredging contract. Leudtke's actions within and about the Channel were ultimately governed by its contract with the Corps.

Indeed, Plaintiffs allege that Defendants' negligent dredging conduct violated the dredging contract. For example, Plaintiffs claim that Leudtke dredged "beyond its contractual obligations" and that the Corps directed Leudtke to "dredge outside the Channel" despite the fact that "the contract between [the Corps] and Luedtke required dredging solely within the confines of the Channel." (Dkt. 1 at ¶¶ 32-34). Plaintiffs' claimed damages are based on the allegations that Leudtke performed dredging activity in violation of the contractual terms. (*See id.* at ¶¶ 36-38, 40-42). In other words, Leudtke's cross-claims only become relevant if Plaintiffs successfully establish Leudtke's liability, and Plaintiffs' theory of liability against Leudtke is based on its alleged dredging activity in contravention of its contract with the United States. Thus, any indemnification or contribution claim by Leudtke against the United States is necessarily rooted in contract.

"Of course, the mere fact that a court has to decide some contract issues in the course of resolving a tort action does not automatically convert the claim into one sounding in contract if there is some independent basis for the tort claim." *J & E Salvage Co.*, 55 F.3d at 989; *see B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 728 (2d Cir. 1983) ("We recognize that it would be improper to classify all claims raising contract issues as contract actions."). The fact that "a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on trespass or conversion into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse, Inc.*, 672 F.2d at 968. Whether "the litigants have a contract between them is not enough: '[T]he relevant question is whether, despite the presence of an underlying contract between the parties, the rights asserted that form the basis of the claims

are founded on the contract or on another ground.'" *Contango Operators, Inc.*, 2011 WL 13130834, at *3 (quoting *B & B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 774 (6th Cir. 2005)).

In concluding that Leudtke's cross-claims are essentially contractual in nature, the Court finds the decision in *Contango Operators* to be instructive. In that case, a cross-claim for negligence was asserted against the United States in an action where the plaintiffs alleged that their pipeline was damaged as a result of dredging operations conducted by the cross-claimant "under contract with" the United States. *Contango Operators, Inc.*, 2011 WL 13130834, at *1. The district court determined that the negligence cross-claim "for failing to inform [the cross-claimant] about the pipeline [was] essentially contractual" because any failure to include such information in the contract was "a duty . . . based in the contractual relationship." *Id.* at *3. Furthermore, any failure by the United States "to inform [the cross-claimant] about the pipeline after the contract was signed" was similarly "a breach consisting of a failure to supply information that should have been included in the contract." *Id.* The cross-claimant further alleged that the pipeline was not reported on navigational charts provided by the United States, *id.*, but any negligence claim based on this allegation was "also essentially contractual" as "[t]hese charts were provided to [the cross-claimant] so that [it] could carry out the promises it made to the [United States] in the contract," *id.* at *3-4. Stated differently, "arguing that the [United States] was negligent in not informing [the cross-claimant] about the location of the pipeline is inextricably bound up in arguing that the [United States] breached a contractual duty to inform [the cross-claimant] about the pipeline." *Id.* at *4.

Here, Leudtke asserts claims against the United States for indemnification and contribution based upon the dredging operations performed under the agreement between Leudtke and the Corps. These cross-claims are "inextricably bound up" with the contractual duties between the Corps and Leudtke under the dredging contract and the alleged breach of those duties as stated in the Complaint. *See Contango Operators, Inc.*, 2011 WL 13130834, at *4. For example, the Corps was allegedly required, by contract, "to provide Luedtke details regarding where to dredge and not to dredge" (Dkt. 1 at ¶ 54), and then violated this obligation by "improperly direct[ing] Luedtke to dredge outside the Channel" or "fail[ing] to properly and appropriately specify, design, or define the scope of the Dredging Project," resulting in damages to the Property (*id.* at ¶¶ 55-57, 69-72). Furthermore, Leudtke allegedly "breached its duty of reasonable care by dredging outside the Channel adjacent to the Property [and too deep within the Channel] beyond what its contractual obligations require." (*Id.* at ¶¶ 81-82, 89-90). Plaintiffs also claim that Leudtke is liable under a theory of private nuisance based upon the Corps' "negligent actions" in failing to conduct the Project's operations pursuant to its contractual duties. (*See id.* at ¶ 108). In other words, "[i]n the absence of [the] contract with the [Corps], . . . 'it is likely that no cause of action would exist at all.'" *Up State Fed. Credit Union*, 198 F.3d at 377 (quoting *Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y.*, 754 F.2d 49, 55 (2d Cir. 1985)).

In other words, if the United States is liable to Leudtke for damages based upon theories of indemnification or contribution, it is because the Corps breached contractual duties owed to Leudtke in failing to provide proper specifications, planning, scoping, or

other information or direction necessary to satisfy its obligations under the dredging contract. *See Contango Operators, Inc.*, 2011 WL 13130834, at *3-4; *see also Cohen*, 873 F.3d at 403 (finding a third-party common-law indemnification claim within the scope of the CDA where the third-party claimant alleged that the United States Postal Service (the "USPS") was negligent in preventing or abating an alleged nuisance on property over which the USPS had exclusive control pursuant to a lease between the third-party claimant and the USPS). As such, Leudtke's cross-claims not only relate to the underlying dredging contract, but also require the Court to interpret the agreement's terms to discern what, if any, duties the Corps breached in directing or otherwise conducting the Project. *See United Fed. Leasing, Inc. v. United States*, 33 F. App'x 672, 675 (4th Cir. 2002) (determining that the claim was covered by the CDA where it was "impossible to ignore the terms of the contract documents" in deciding the merits of the conversion claim (quotation omitted)); *RMI Titanium Co.*, 78 F.3d at 1136-37 (concluding that the CDA applied where "the existence of a contract is essential" to the assertion of the plaintiff's statutory and defamation claims); *J & E Salvage Co.*, 55 F.3d at 988 (finding the action to be "essentially one of contract" where the merits required the construction of the contract's terms); *Duplantis v. NSB Props., L.L.C.*, No. CIV.A. 12-1506, 2013 WL 5410400, at *3 (E.D. La. Sept. 25, 2013) (finding an indemnification cross-claim subject to the CDA where the United States allegedly breached its contractual obligations and the cross-claimant claimed the United States must indemnify it for damages arising from that breach, because the contract's terms must be "construed as conferring a legal duty" and it must be established that the United States breached that duty).

Accordingly, Leudtke has failed to establish this Court's subject matter jurisdiction to entertain the cross-claims. Because the resolution of Leudtke's cross-claims necessarily relate to and arise from the contractual relationship between itself and the Corps and require the interpretation of the agreement's terms in determining the scope of the Corps' duties, the cross-claims fall within the scope of the CDA. It is undisputed that Leudtke failed to exhaust its administrative remedies under the CDA.

To the extent Leudtke argues that principles of judicial economy warrant exempting its indemnification or contribution claims from the CDA's administrative exhaustion requirements, such arguments are unpersuasive. As Leudtke's counsel conceded at oral argument, principles of judicial efficiency will not create subject matter jurisdiction where the Court does not have it. The CDA's exhaustion provisions constitute a jurisdictional bar to this Court's subject matter jurisdiction, and thus, they must be satisfied before any claim falling within the CDA's purview may be asserted in a lawsuit.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss (Dkt. 16) is granted, and Leudtke's cross-claims are dismissed for lack of subject matter jurisdiction.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 18, 2019
Rochester, New York